Reese, J.
delivered the opinion of the court.
A certain Edward Smith died in Carter county, in the year 1809. In 1807 he made and published his last will and testament, in which, among other things, he devised as follows, to wit; “I give and bequeath to my dearly beloved wife, Catha-rine, all my stock of horses, cows, hogs, sheep and bees, with all my household furniture and farming utensils of every kind; also my wagon and gear, still and vessels; also my plantation whereon I now live, for and during her natural life; also my negro woman Agness and her child, and their increase for and during her natural life, and then to go to my youngest daughter, Nancy, and her heirs forever.” In 1808, the said Smith made the following instrument, to wit; -'‘To all whom it may concern, know ye, that I Edward Smith of the county of Carter and State of Tennessee, for and in consideration.of the love towards my loving wife, Catharine Smith of the same county and State aforesaid, have given, and by these presents do finally give and grant unto the said Catharine Smith, a negro Woman named *222 Agness, and one child named Nelly, and their increase for and during her natural life, and then to go to my youngest daughter, Nancy, and her heirs forever. Before signing, these presents, I have delivered the said negroes with my own hands to my wife Catharine, to dispose of to my daughter Nancy whenever she thinks proper, bearing even date, to have and to hold the said negroes to her, Catharine Smith, and my daughter Nancy and her heirs forever, from henceforth, as her and their proper negroes absolutely, without any manner of condition.” In 1819, Nancy Smith intermarried with Vaught Heaton: in 1829 Vaught Heaton died, his wife, Nancy, and his mothez-in-law, Catharine Smith, surviving. A year or two afterwards Catharine Smith died, and her daughter Nancy, the widow of Heaton, subsequently intermarried with James B. Moorely: he has departed this life, leaving one child of that marriage and his wife, and also leaving several other children of a former marriage surviving. His administrator filed a bill against his widow and McGween, to recover certain negroes, descendants of Agness and Nelly, in the will and deed mentioned. And the complainant, the administrator of Vaught Heaton, filed his cross bill, alleging that Catharine Smith, in her life time, surrendered her life estate to Heaton, in consequence of which the entire property in the negroes.vested absolutely in Heaton, freed from his wife’s right of survivorship in the title or estate in remainder. His Honor the Chancellor gave the relief prayed in the original bill, and thé bill above referred to, he dismissed. From this latter decioe alone an appeal has been taken. Voluminous as is the record in pleadings and proof, and elaborate as has been the discussion in this case, there is no material question which has not already been decided by this court in the case Caplinger vs. Sullivan, 2 Hump. 548, and Perry and Patterson vs. Gill, 2 Hump. 218. We think no question as to the effect of a revocation of the bequest of the will, by operation of the deed can arise in this case, because the cross bill, as well as the original bill, expressly alleges, that the object and intention of the deed was effectually to carry out the bequest of the will. But if such a question could arise, then, we think it is clear that the interest of Catharine Smith under the will, and that intended to *223 be given to her by the deed being identical, and she shown, in both instances, to be the favored object of Edward Smith’s bounty, the ineffectual provision of the deed cannot operate to revoke the. bequest to her for life in the will; thus defeating the leading purpose of Edward Smith in both instruments, so as to let in Nancy Smith to a present interest under the deed, in the absence of any will, which we much doubt, and are not called on in this case to determine. Whether the daughter, therefore, claims by the will, or can be held to claim any thing by the deed, in either case, her interest is a remainder only, not commencing in enjoyment till the death of the mother. The surrender of the life estate by the mother, if it took place, to Heaton, the son-in-law, would not merge and incorporate that interest with the remainder belonging to the wife, so as to invest the husband presently with that future interest, and* defeat the right of sur-vivorship in the wife, if the husband should die before the termination of the life estate, and this for the reasons stated by the court in the case of Caplinger above referred to. The gift of the life estate to the husband, can; we think, have no greater effect than would the sale of it. These negroes, then, remained to the wife, on the happening of the death of her mother after that of her husband, and of course became the property of the second husband on his marriage with her, and he being dead, they must go to his representatives; so we must affirm the decree and dismiss the bill.